Argued April 6, reversed April 13, 1955

# BLYTH & CO., INC. *v.* CITY OF PORTLAND

282 P. 2d 363

*Robert A. Leedy,* Portland, argued the cause for Respondent.

*Thomas J. White,* Portland, argued the cause for Appellants.

LUSK, J.

The question for decision on this appeal is whether Marshall N. Dana, a recent appointee to the Commission of Public Docks of the City of Portland, is disqualified to hold that office because he is not a resident of the City of Portland.

The question was submitted to the Circuit Court without action or suit pursuant to the provisions of ORS 27.030. The court was of the opinion that under the charter of the City no one but a resident of the City is qualified to serve as a dock commissioner, and entered a decree holding Mr. Dana disqualified. The City and the Dock Commission have appealed.

Blyth & Co., Inc., the plaintiff, is a Delaware corporation which is qualified to do business in the State of Oregon and maintains a place of business in the City of Portland. It is a taxpayer in the City of Portland, in Multnomah County, and in the State of Oregon. Its principal business is the purchase and sale of securities, including municipal bonds, both on its own account and for others. The Commission of Public Docks is a legally constituted agency in the City of Portland first created by the charter of the City in 1903. The Commission exercises broad powers over the harbor front of the City, including the power to purchase or acquire by condemnation lands for public-owned dock purposes and the like and to issue in the name of the City revenue and general obligation bonds. See Charter of the City of Portland §§ 6-101 to 6-106. The particular interest of Blyth & Co. in the question of Mr. Dana's qualifications to serve as a member of the Dock Commission derives from the fact that it is a consistent bidder for bonds issued by the Dock Commission and a holder of such bonds in large amounts. The standing of Blyth & Co. to raise the question is conceded.

The Charter amendment creating the Dock Commission contained the following provisions respecting the selection, qualifications and tenure of the commissioners:

"The department of public docks shall be administered by a dock commission composed of five (5) members who shall be appointed by the mayor. Within ten (10) days after the adoption of this measure the mayor shall appoint five (5) persons, who are qualified voters and have been three (3) years residents of the City of Portland, members of the dock commission. Such persons shall determine by lot among themselves the length of their terms, for one, two, three, four and five years, respectively.

On the expiration of the term of any member his successors shall be appointed by the mayor. Resignations when made shall be addressed to and accepted by the mayor, and vacancies filled by him by appointment for the unexpired term * * *." (§ 6-102)

■ We are of the opinion that the residence requirements in the foregoing section were not limited to the first appointees to the Commission, but were intended to have a continuing application. Any other interpretation would be highly unreasonable. If, therefore, the residence qualifications set forth in § 6-102 are still in effect, Mr. Dana is clearly disqualified because it is conceded that he is not a resident of the City but resides some ten miles beyond the City limits in Clackamas County. The appellants contend, however, that these provisions have been repealed by a charter amendment adopted in 1954 prior to Mr. Dana's appointment.

Section 2-505 of the City's Charter formerly provided:

"No person shall at any time hold more than one office yielding pecuniary compensation under this charter, or under the mayor, council, or any of the departments of the city. All municipal officials, except women, shall be registered voters of the city of Portland."

At the general municipal election held on November 2, 1954, the people adopted a charter amendment relating to residence qualifications of officers and employees of the City of Portland which became § 2-511 of the Charter, and at the same time amended § 2-505. These sections read as follows:

"Section 2-511. EMPLOYES, RESIDENCE REQUIREMENT EXCEPTIONS. Except as hereinafter provided, all officers and employes receiving salary or wages from this city shall be residents

of the City of Portland at the time of their election or employment, and continuously during the period of such employment. Any employe coming under the provisions of civil service who is not a resident of the city at the time of employment shall become a resident of the city by the end of his or her probationary period. Any officer or employe who is not a resident of the city on the effective date of this section shall within ten years from such effective date establish residence and become a bona fide resident of the city. Officers or employes whose place of employment in the city service is outside the city limits shall, during such employment be permitted to reside outside the city, but upon being transferred or assigned to employment within the city, such officers or employes shall within one year after such transfer or assignment establish residence and become a bona fide resident of the city. *The provisions of this section shall not apply to consulting employes employed under authority of Section 2-504 of this charter, or to unpaid members of city advisory boards, commissions or committees.* The Council may by ordinance waive the provisions of this section in the future employment of persons to technical, professional or scientific positions, provided, however, that any person so employed shall within one year from the date of such employment establish residence and become a bona fide resident of the city. For the purposes of this section, the City of Portland shall mean and include the area within the city boundaries as they may be established from time to time and shall not be limited to the boundaries of said city on the effective date of this section. Violation of the provisions of this section shall be deemed cause for removal or discharge of any officer or employe of the city.

"Section 2-505. REQUIREMENTS FOR ALL OFFICIALS. No person shall at any time hold more than one office yielding pecuniary compensation under this charter, or under the Mayor, Council, or any of the departments of the City." (Italics added.)

Members of the Dock Commission are unpaid.

Putting to one side, for the moment, the language of § 2-511 which we have italicized, it is apparent from a reading of the foregoing provisions that, by eliminating the second sentence of § 2-505, the requirement that *all* municipal officials except women shall be registered voters (and, therefore, residents) of the City has been abandoned, and a requirement substituted that all officers and employees "receiving salary or wages from this city" shall be residents "except as hereinafter provided". The exceptions permit employees under Civil Service, not residents of the City at the time of employment, officers and employees not residents on the effective date of the amendment, and employees whose places of employment in City service are outside of the City limits, to continue to reside elsewhere than in the City during the periods and under the circumstances delineated.

Having so provided, the section continues:

"The provisions of this section shall not apply to consulting employes employed under authority of Section 2-504 of this charter, or to unpaid members of city advisory boards, commissions or committees."

The correct interpretation of this language is decisive of the case. The respondent argues that, so far as it relates to "unpaid members of city advisory boards, commissions or committees" the sentence serves no purpose whatever because the residence qualifications prescribed by preceding sentences of the section apply only to *paid* officers and employees. Therefore, it is said, without this sentence the residence qualifications would have no application to the members of the Dock Commission who are unpaid. The conclusion from this construction is that the qualifications of residence for dock commissioners prescribed

by § 6-102 of the City Charter have been left unimpaired by the adoption of the 1954 charter amendment. This was the view taken by the learned judge of the Circuit Court.

But there is another view more conformable, we think, to the manifest legislative intent and to the accepted canons of statutory interpretation. The question is: What is meant by the words "the provisions of this section" in the sentence under examination? Read literally, the sentence becomes a mere redundancy, so far as unpaid members of advisory boards, committees and commissions are concerned, because, of course, provisions about paid officers and employees do not apply to those who are not paid. But courts do not cast aside language of a law as meaningless if it is reasonably possible to give it effect. It must be presumed that the legislative body had a purpose in mind in all the language it used, and it is the duty of courts to endeavor to ascertain that purpose. The maxim is "ut res magis valeat quam pereat", and one of the accepted rules of statutory construction requires courts so to construe a statute as to give effect to every section, clause, phrase or word of the legislative act. *Twohy Bros. Co. v. Ochoco Irr. Dist.*, 108 Or 1, 19, 210 P 873, 216 P 189. To achieve such a result here it is permissible, and we think in accordance with the legislative intent, to construe the sentence in question as providing that the residence requirements in the section shall not apply to—among others—unpaid members of commissions which is the same thing as to say that there shall be no residence qualifications for such officers, just as under the same sentence there are to be no residence qualifications for "consulting employees" appointed "to perform technical or scientific services whose employment shall continue only so long as the particular occasion shall continue." City

Charter § 2-504. Certainly, the intention that no residence qualifications shall be required of such "consulting employees" is clear. And the reason for the exemption is obvious, since, otherwise, it would be impossible for the City to avail itself of the services, at times deemed necessary, of experts in various phases of municipal government who reside in other parts of the country and who have established national reputations in their particular fields of specialization. And the fact that it was the undoubted intention thus to exempt such "consulting employees" is strong evidence that this was the intention also with respect to unpaid members of city advisory boards, commissions and committees; for it is hardly to be supposed that the words "the provisions of this section shall not apply to" mean one thing with respect to one class of officers and employees and a different thing with respect to other classes, all grouped together in one sentence as the objects of the opening phrase. It is a well-known phenomenon of modern life in the metropolitan centers, concerning which we had occasion to comment in the opinion in *Thompson v. Dickson,* 202 Or 394, 275 P2d 749, that a great many people whose business activities are within a city maintain their homes and places of residence outside the city limits, and that among these are a due proportion of men of large civic and business experience and proven ability, who are willing to make the sacrifice incident to service on unpaid municipal boards and commissions. Under the original charter provision creating the Dock Commission of the City of Portland it was impossible for the City to obtain the benefit of the services of such men. It was to correct this condition, we believe, that the provisions of § 2-511 of the City Charter with respect to unpaid members of advisory boards, committees and commissions were adopted.

■ Under this construction of that section, which we are satisfied is the correct one, there arises a clear and irreconcilable conflict with § 1-602 of the City Charter, for that section imposes residence qualifications for members of the Dock Commission, while the later enactment dispenses with such qualifications. It follows that the residence qualifications contained in § 1-602 have been repealed by implication. There have been no such requirements since the effective date of § 2-511, and Mr. Dana, therefore, is qualified to sit as a member of the Dock Commission of the City of Portland.

The decree of the Circuit Court is reversed.