Argued September 16, affirmed October 28, 1974

MURPHY ET AL, *Petitioners, v.* NILSEN,
*Respondent.*
527 P2d 736

*Clifford N. Carlsen, Jr.,* Portland, argued the cause for petitioners. With him on the brief were Miller, Anderson, Nash, Yerke & Wiener and Jeffrey L. Dye, Portland.

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Langtry and Fort, Judges.

LANGTRY, J.

Petitioners appeal from an administrative decision of the Labor Commissioner finding that petitioners have violated ORS 658.195(4) which requires employment agencies to designate themselves as "agencies" when advertising. Petitioners were required to pay a $150 civil penalty. The material question at issue is whether entities, such as the petitioners, are subject to the employment agency laws of Oregon as comprehensively amended in Oregon Laws 1973, ch 678. ORS 658.005 to 658.245. The petitioners concededly constitute an employer-fee-paid personnel referral service, i.e., petitioners are retained and paid by employers to seek employes of particular qualifications. Those employes actually procured do not directly or indirectly pay any fee.

ORS 658.005 to 658.245 provide for the licensing and regulation of employment agencies by the Labor Commissioner and for the appointment of an Advisory

Board to advise the Commissioner in the performance of such duties. Oregon Laws 1973, ch 678, was introduced and eventually passed as House Bill 2629, after being extensively amended in the Senate. In both the Engrossed House Bill and the Re-Engrossed House Bill which followed Senate amendments, ORS 658.005 (3) (a) provided that "unless the context requires otherwise" an "employment agency" was:

"The business of conducting in any capacity an intelligence office, employment agency, registry or any agency, business or office that procures, offers, promises or attempts to procure employment or engagements for others, or that registers persons seeking to procure or retain employment or engagement, or that gives information as to where and from whom such help, employment or engagement may be procured, or that provides employment or engagements, where a fee or other valuable consideration is exacted or attempted to be collected from the applicant for employment, directly or indirectly, for such services and regardless of where such business is conducted."

Reference to the legislative history of Oregon Laws 1973, ch 678, shows that Engrossed House Bill 2629 also provided that ORS 658.015(5) was to read as follows:

"ORS 658.005 to 658.245 do not apply to any person, bureau or organization whose charges for services are paid only by employers to whom individuals seeking employment are referred or only by employers for purposes of identifying, appraising or recommending individuals for employment."

In the Re-Engrossed House Bill, which incorporated the Senate amendments and became the final enactment, the period after the word "employment" in ORS

658.015(5) was deleted and there was added the following:

"* * * so long as all of the following conditions are continuously met:

"(a) The compensation for each such position is at the rate of not less than $20,000 per year.

"(b) In no instance is the individual who is identified, appraised, referred or recommended for such a position charged a deposit, retainer or fee directly or indirectly * * *.

"(c) In no instance does the person, bureau or organization advertise positions for which the compensation is less than $20,000 per year, or that any of the fees mentioned in paragraph (b) of this subsection are charged by such person, bureau or organization."

It can be argued that when the last 11 words and paragraphs (a), (b) and (c) were added to ORS 658.015(5) an apparent conflict was created between that provision and ORS 658.005(3) (a). If ORS 658.005(3) (a) is read by itself, it can be argued that employment agencies defined by the Act are only those entities which seek their fee from the applicant for employment; when ORS 658.015(5) is read in its amended entirety, however, it appears that there was an intention on the part of the legislature to also make the Act apply to those entities whose services are paid by employers if such entities deal in positions where the pay for each position is less than $20,000 per year. Thus, the Act would *"not* apply to" only those entities where the positions dealt in pay over $20,000 per year, and the employer pays the cost of the referral. Thus, if, by its amendments to ORS 658.015(5), the legislature intended to expand the applicability of the statute, it is apparent that it erred in failing to remove from the definition of "employment agency" in ORS 658.005

(3) (a) the words "from the applicant for employment."

■ The Commissioner, in trying to determine legislative intent, took testimony from persons interested in the legislation (possibly lobbyists) about their observations of what occurred and what the legislators were intending. Such evidence is incompetent for this purpose, just as the testimony of an individual legislator would be. *See* 2A Sands, Sutherland Statutory Construction §§ 48.10 and 48.17 (4th ed 1973).

■ We look to the legislation itself first, and if there is an ambiguity or conflict in it, then to intrinsic aids—construction of language used—and extrinsic aids—like legislative history—as we try to give effect to legislative intent. Reference to the legislative history of the Act bears out the conclusion that the legislature intended to but did not take out the words "from the applicant for employment" when the bill was amended. Exhibit J of the bill's records in the Senate Labor Committee reveals that Oregon Laws 1973, ch 678, was patterned upon the statutes of California covering the same subject. Cal Bus & Prof Code § 9902(a) (West Supp 1974) defines "employment agency" or "agency" in exactly the same terms as those used in ORS 658.005(3) (a) except there is not included therein the words "from the applicant for employment." Section 9902.6 of the California Code provides for exemption for "management consulting businesses" which act solely on behalf of and collect their fees from the employers, provided that the minimum first year salary for each position is not less than $20,-000 per year. Subdivisions (b) and (c) of § 9902.6 of the California Code read almost identically to ORS 658.015(5) (b) and (c). Thus, from this standpoint, it

appears reasonable to assume that when the Oregon Legislature sought to copy the California Act in the respects in question at bar it failed to make the definition of an "employment agency" clearly harmonize with the limited exception (perhaps more accurately denominated a proviso within an exception) provided employer-paid entities.

2A Sands, Sutherland Statutory Construction, supra, § 47.11, states:

"Exceptions, like provisos, also operate to restrict the general applicability of legislative language. Ordinarily a proviso occurs within the body of a section while an exception is drafted as a separate section." (Footnote omitted.)

Petitioners have cited us *State v. Young,* 74 Or 399, 406, 145 P 647 (1915), which notes:

"* * * The office of a proviso is to limit or restrain preceding enactments, and cannot be held to enlarge the scope of such preceding enactment * * *."

The same case discusses in considerable detail the difference between provisos and exceptions in statutes. In either instance they operate to limit or clarify application of the Act. At bar, if the legislature intended the Act to apply only to employe-fee-charging agencies, why did it enact an additional section exempting some but not other employer-fee-charging agencies? If the legislature intended ORS 658.005(3) (a) to apply to employe-fee-charging agencies, the exempting section could not "limit or restrain" in any way the coverage of the Act. *See also* ORS 174.020.[1] Thus, by

---

[1] "In the construction of a statute the intention of the legislature is to be pursued if possible; and when a general [provision] and [a] particular provision are inconsistent, the latter is paramount to the former. So a particular intent shall control a general one that is inconsistent with it." ORS 174.020.

using rules of statutory construction, we have reason to assume that the legislature either intended to but overlooked amending ORS 658.005(3) (a) (which from other standpoints we have pointed out above is a reasonable assumption), or concluded that the definition therein was broad enough without amending it to specifically include employer-fee-charging entities. We conclude the latter alternative construction must prevail.

■ We may not rule that ORS 658.015 (5) (a), (b) and (c) shall be completely nullified, as petitioners contend. ORS 174.010.⁹ The situation with reference to a charter amendment was similar in *Blyth & Co., Inc. v. City of Portland,* 204 Or 153, 282 P2d 363 (1955). The court noted that the words in question there became a mere redundancy if read literally and said:

> "* * * [C]ourts do not cast aside language of a law as meaningless if it is reasonably possible to give it effect.* * * [Courts must so] construe a statute as to give effect to every section, clause, phrase or word of the legislative act * * *." 204 Or at 159.

*See also Banif Corporation v. Black,* 12 Or App 385, 507 P2d 49 (1973); *Wingfield v. National Biscuit Co.,* 8 Or App 408, 494 P2d 905 (1972); 2A Sands, Sutherland Statutory Construction, supra, § 46.06.

> "* * * [I]t is an elementary rule of construction that all sections of an act relating to the same subject matter should be considered together * * *." 2A Sands, Sutherland Statutory Construction, supra, § 47.06.

⁹ "In the construction of a statute, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars such construction is, if possible, to be adopted as will give effect to all." ORS 174.010.

■ Considering the questioned sections together, we find that the legislature provided in ORS 658.005(3) (a) that for the purposes of the statute *"unless the context requires otherwise"* (emphasis supplied) an "employment agency" was:

"The business of conducting *in any capacity* an intelligence office, employment agency, registry *or any agency* * * * that procures, offers, promises or attempts to procure employment or engagement . for others, *or* that registers persons seeking to procure * * *, *or* that gives information as to where * * * employment * * * may be procured, *or* that provides employment or engagements, where a fee or other valuable consideration is exacted * * * from the applicant for employment, directly or indirectly * * *." (Emphasis supplied.)

ORS 658.015(5) (a), (b) and (c) provide an exemption for employer-fee-paid entities dealing only in over $20,000 per year positions. Taken in "context," these provisions strongly suggest that employer-fee-paid entities other than those specifically excluded fall within the definition of "employment agency" and are subject to the Act.

Giving effect to every clause of these two provisions leads us to read the definition of ORS 658.005 (3) (a) as setting up four categories of entities that are defined, each separated by the disjunctive "or." Only the last of these, then, is specifically subject to the restriction concerning the fee taken from the employe.

"* * * [R]epugnancy between the proviso and other parts of an act will not render the other parts invalid." (Footnote omitted.) 2A Sands, Sutherland Statutory Construction, supra, § 47.09.

With this interpretation, we now read the first category in ORS 658.005(3) (a), "The business of con-

ducting *in any capacity* an intelligence office, employment agency, registry *or any agency* * * * that procures * * * employment * * * for others * * *" (emphasis supplied), as broad enough to cover the petitioners' type of business. This construction gives effect to legislative intention and it does not ignore any of the Act's provisions. *See* 2A Sands, Sutherland Statutory Construction, supra, §§ 47.07, 47.11 and 47.37.

■ Petitioners point out that several of the provisions of the Act require contracts and regulate fees between the agency and the employe-applicant. Because petitioner-agency exclusively makes its contract for services with the employer and seeks no fee from the employe-applicant, it argues that these provisions if applied to it would require pointless acts, that is, would produce absurd results, and that therefore the Act should be held not to apply to petitioners. We note that similar provisions are contained in the California Act upon which the Oregon law is modeled, and which unequivocally applies to employer-paid agencies. If a provision of the Act does not apply to petitioners' mode of doing business, the Commissioner need not nevertheless require its application. No allegation is made that the Commissioner has made any such requirement. The law does not require an idle act.[9] Thus, absurd results can be avoided.

Although we base our decision upon different grounds, we agree with the result in the Commissioner's determination.

Affirmed.

---

[9] "* * * [A] court should never presume that the legislature intended that a useless act should be done * * *." MacVeagh et al. v. Multnomah Co. et al., 123 Or 345, 349, 262 P 248 (1927), *modified* 126 Or 417, 270 P 502 (1928).