HARRY CARSON, Jr., PAT McCARTHY, and
WALTER HEINE, COMMISSIONERS FOR MARION
COUNTY, HAROLD DOMOGALLA, ASSESSOR
FOR MARION COUNTY, and DOLORES GLENNIE,
TAX COLLECTOR FOR MARION COUNTY
*v.*
DEPARTMENT OF REVENUE

Larry Jon Pound, Marion County Special Counsel, Salem, represented plaintiff.

Alfred B. Thomas, Assistant Attorney General, Salem, represented defendant.

Decision for defendant rendered October 21, 1977.

CARLISLE B. ROBERTS, Judge.

Plaintiffs, complying with the provisions of ORS 306.545, have appealed from the defendant's Order No. VL 77-53, dated February 1, 1977. The issue is the propriety of cancellation by the county assessor of a veteran's widow's exemption claimed under ORS 307.250 to 307.290. The case was submitted on a stipulation and briefs.

The taxpayer, Mildred L. Walling, residing in Marion County, Oregon, had, for at least two years prior to January 1, 1976, enjoyed the partial exemption from property taxation allowed a veteran's widow's homestead under ORS 307.250, claiming the exemption for property described as Assessor's Account No. 12868-000. ORS 307.260(1)(a) requires that a widow qualifying for the exemption shall file with the county assessor, on forms supplied by the assessor, a claim in writing on or before April 1 of the year in which the exemption is claimed. The taxpayer met this requirement for 1976-1977 by filing a proper claim on January 6, 1976, for Assessor's Account No. 12868-000. However, on May 27, 1976, the taxpayer sold this homestead and simultaneously acquired another, described as Assessor's Account No. 12618-012.

ORS 307.260(1)(a) makes an exception for the April 1 deadline for filing an application by providing "that when the property designated is acquired after March 20 the claim for that year shall be filed within 30 days after the date of acquisition."

The form on which a claim is to be made by the widow to the assessor has been prepared by the

Department of Revenue and comes in duplicate. Apparently, it was last revised in October 1973. At the top of each copy, in boldface type, is a statement: "Application For War Veteran's Property Tax Exemption As Provided By ORS 307.250. Application must be filed on or before April 1 of each year. If property is acquired after March 20 and before July 1, the claim for that year must be filed within 30 days after acquisition." The pertinent sections of the statute, ORS 307.250, 307.260, 307.270 and 307.290, are printed on the back of the taxpayer's copy. The taxpayer did not contact the office of the county assessor to file an application to transfer her exemption to the new property until July 2, 1976, at which time she was advised by a clerk that she was probably too late for the 1976-1977 tax year, but her application was submitted to the county assessor for study. On November 2, 1976, the assessor advised the petitioner that her application was denied as untimely.

■■ On November 17, 1976, the taxpayer petitioned the Department of Revenue under the provisions of ORS 307.475. The first two subsections of this section read:

"(1) Any taxpayer may apply to the Director of the Department of Revenue for a recommendation that the value of certain property be stricken from the assessment roll and that any taxes assessed against such property be stricken from the tax roll on the grounds of hardship.

"(2) As used in this section, 'hardship' means a situation where property is subject to taxation but would have been exempt had there been a timely filing of a valid claim for exemption or cancellation of assessment, and where the failure to make timely application for the exemption or cancellation was by reason of good and sufficient cause."

The defendant's Opinion, No. VL 77-53, states:

"This matter [the taxpayer's petition] was commenced as a request pursuant to ORS 307.475, but the facts as developed are sufficient to constitute an appeal

[ 251 ]

under ORS 306.520 [review of an act of the county assessor]."

The court notes that, in prior cases under the "hardship" statute, the department has ruled that the "good and sufficient cause" does not include a failure to file a timely application because of oversight, inadvertence or ignorance of the law. This court has approved defendant's rule, substantially, in *Nat'l Metallurgical Corp. v. Dept. of Rev.*, 7 OTR 142 (1977); *Jim Fisher Motors, Inc. v. Dept. of Rev.*, 7 OTR 90 (1977); *Norbud, Inc. v. Dept. of Rev.*, 6 OTR 335 (1976); *Pratum Co-Op Whse. v. Dept. of Rev.*, 6 OTR 130 (1975). It therefore appears that the Department of Revenue resolved that an appeal, useless under ORS 307.475, could be determined under ORS 306.520. Whether the procedural requirements of detailed petitions in writing, modes of service, and the like, required by ORS 306.520, were followed in this instance is not made crystal clear in the stipulation of facts. However, it is stipulated that the taxpayer filed an application for transfer of the exemption on July 2, 1976, and, at the departmental hearing of January 10, 1977, the taxpayer, the county assessor and an assistant county counsel were present. The court presumes that the requirements of due process were met and that statutory procedures were followed. ORS 41.360(15).

In finding for the taxpayer, the defendant has relied upon its interpretation of ORS 307.290 which, in pertinent part, reads:

"In the event any of the following conditions occur before the assessment roll of any year becomes a tax roll, the exemption otherwise allowable under ORS 307.250 shall terminate and not be allowed on such roll:

"(1) If the veteran or widow sells or contracts to sell the property designated for the exemption, *and such veteran or widow owns no other property to which the exemption may apply.*" (Emphasis supplied.)

Defendant cites an informal opinion of legal counsel under date of November 1, 1961 (designated as

PTLA(CE) 307.270, p 3; OF 1041-V), construing ORS 307.270 and 307.290, which reads:

> "*Transfer of Exemption.* Taxpayer sold his property on which an exemption was allowed, and moved to a different house which he had owned for several years. The assessor wrongly canceled the exemption and caused the roll to be debited by the amount exempted. The correct step under the law would have been to transfer the exemption to the new homestead of the veteran. ORS 307.270 provides that a veteran's exemption applies to the veteran's homestead or personal property which he owns or holds under a recorded contract for the purchase thereof, before July 1, of the year in which the exemption is claimed. ORS 307.290 provides that if the veteran sells the exempt property, the exemption shall terminate *unless he owns other property to which the exemption may apply.* The exemption should have been transferred to the new homestead of the veteran." (Emphasis supplied.)

The procedure to be followed to effectuate the exception in ORS 307.290(1) is not specified. However, the defendant has made a commendable effort to give effect to every section, clause, phrase or word in the statute. *Blyth & Co., Inc. v. City of Portland,* 204 Or 153, 159, 282 P2d 363, 366 (1955). The principal aim of the legislature was to give a partial exemption. ORS 307.290 spells out conditions which terminate the exemption, but in ORS 307.290(1) the legislature has provided an exception to termination where the veteran or widow owns other property to which the exemption could apply.

██ Based on what appears to be a long-established interpretation of the statute by the administrator, the court accepts the defendant's interpretation of the language in ORS 307.290(1) as intending a transfer of exemption from a parcel sold to a second parcel which meets the requirements of a homestead (or to personal property which is eligible for exemption). *Keyes v. Chambers et al,* 209 Or 640, 307 P2d 498 (1957).

██ The plaintiffs have argued that an exemption is not automatically provided for property owned by an

eligible taxpayer. Instead, the taxpayer must affirmatively seek the exemption. He or she is required to file a claim "in writing" "on forms supplied by the assessor." ORS 307.260(1)(a). The legislature has recognized that the assessor must be fully informed of the facts upon which a judgment of exemption can be made, as demonstrated by its enactment of ORS 307.162, 307.260, 307.340, 307.380, 307.395, 307.420 and 307.460, and other statutory provisions. The same reasoning is applicable to a transfer of the exemption under ORS 307.290(1). The form supplied requests information which is necessary for determining whether a claim will be granted. Additionally, and importantly, the form requires information that identifies the property for which the exemption is sought and characterizes that property.

The parties stipulated that the summary of facts in the Opinion and Order of the Department of Revenue, No. VL 77-53, is correct and undisputed. One such fact is: "Petitioner contacted the Assessor's office on the first or second of July and *filed an application* to transfer the exemption to the new property." (Emphasis supplied.) It is assumed by the court that this means that the application was filed on the regular form, supplied by the assessor, and therefore contained the data needed by the assessor to effect the transfer. This assumption is aided by Plaintiffs' Opening Memorandum, 1, lines 24-26. This leaves the question of timely application (the assessor's principal question) and whether the language of ORS 307.260 is applicable to a transfer. That statute states:

"(1)(a) * * * except that when the property designated is acquired after March 20 the claim for that year shall be filed within 30 days after the date of acquisition."

This time structure runs afoul of the time provision in ORS 307.290, which provides for termination if specified conditions exist before the assessment roll becomes a tax roll, a date governed by ORS 311.115:

"The assessor shall deliver the roll to the tax collector

[ 254 ]

not later than October 15 each year. The assessment roll shall be delivered in counties in which the assessor does not prepare a separate assessment roll and a separate tax roll. The assessment roll thereafter shall be a tax roll. * * *"

 The specified conditions required here are a sale before October 15 without ownership of other property to which the exemption could apply. This language evidences the legislative intent to allow a transfer of the exemption to appropriate property. The most complete utilization of the provision would be to allow a claim for such transfer up to and including October 14. The 30-day time provision in ORS 307.260 appears to be directed to the situation where eligible property was first acquired after March 20 of the assessment year. A first claim can be made thereon within 30 days after the date of acquisition. (ORS 307.270 requires the new property to have been acquired before July 1 of the year in which the exemption is claimed.) The court places great weight upon the fact, admitted by the counsel: "On or about July 2, 1976, taxpayer filed an application to transfer her exemption. On November 2, 1976, the Marion County Assessor advised taxpayer that her application was denied as not being timely filed." (Pl Op Mem, 1.) Under defendant's interpretation, affirmed herewith by the court, filing was timely because a transfer of an approved exemption, not an original exemption, was sought, and a written application containing the necessary data was filed with the assessor before October 15 of the tax year.

The defendant's Order No. VL 77-53, dated February 1, 1977, is affirmed. The County Assessor and the Tax Collector for Marion County shall amend the 1976-1977 tax roll to show the allowance of the veteran's widow's exemption allowed by ORS 307.250 as to Account No. 12618-012. Any excess taxes found to be paid as a result of the amendment shall be refunded by the County Commissioners of Marion County, together with statutory interest thereon as provided by ORS 311.806 and 311.812.